FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 11, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KALISPEL TRIBE OF INDIANS and SPOKANE COUNTY,<br><br>    Plaintiffs,<br>-vs-<br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>    Defendants,<br>SPOKANE TRIBE OF INDIANS,<br><br>    Intervenor-Defendant. | No.   2:17-CV-0138-WFN<br><br>ORDER |

    A motion hearing was held June 17, 2019.  Kalispel Tribe of Indians [Kalispel] was represented by Zackary Welcker; Spokane County was represented by Jennifer MacLean; Federal Defendants were represented by Steven Miskinis, with Devon McCune participating telephonically; and Spokane Tribe of Indians was represented by Danielle Spinelli, James Barton, Kevin Lamb, and Scott Wheat.  The Court addressed the parties' cross Motions for Summary Judgment as well as the Federal Defendants' Motion to Strike. ECF Nos. 79, 82, 96, 97, and 98.  For the reasons detailed below, the Court grants Defendants' Motions for Summary Judgment.

## BACKGROUND

    Located a few miles west of Spokane in Spokane County, Airway Heights is home to Fairchild Air Force Base, Northern Quest Casino, and, more recently, the Spokane Tribe's casino.  Though Airway Heights falls within Spokane Tribe's aboriginal land, the

ORDER - 1

Kalispel Tribe obtained trust land within Airway Heights and successfully obtained permission to build the Northern Quest Casino twenty years ago. Northern Quest Casino has proved lucrative for the Kalispel, bringing in profits that benefited the Kalispel tribal members by funding local governmental interests as well as providing direct payments to tribal members. In 2001, the United States acquired land in trust for the Spokane Tribe nearby the Northern Quest Casino. Five years later, the Spokane Tribe sought Department of the Interior [Department] approval for gaming on the trust land with a proposed casino within two miles of the Northern Quest Casino. Permission for gaming on the property required a two-part determination by the Department of the Interior.

Over the course of the next ten years the Department examined the Spokane Tribe's request. The Department consulted an expert to assess how an additional gaming facility would affect the surrounding community including the Kalispel. Local officials engaged with the Department to address concerns about the proposed casino. The Department initiated the processes required under the National Environmental Policy Act [NEPA] to assess the environmental impact. On June 15, 2015, the Department found in favor of Spokane Tribe; just shy of a year afterward, Governor Jay Inslee concurred, marking the conclusion of the approval process. In 2018, twelve years after the Spokane Tribe first requested a two-part determination, the casino opened for business with plans for further development into the future.

## ANALYSIS

The "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Judicial review for APA actions is based on the agency's administrative record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–84 (1990). The court's role is to determine whether the agency's record supports the agency's decision as a matter of law under the APA's arbitrary and capricious standard of review. Review of a final agency determination under the Administrative Procedure Act "does not require fact finding on behalf of this court. Rather, the court's review is limited to the administrative

ORDER - 2

1 record . . . ." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir.1994). Consequently, the parties agree that the Court's analysis is limited to the record with no disputed material facts.

"The Administrative Procedure Act, 5 U.S.C. § 551 et seq., which sets forth the full extent of judicial authority to review executive agency action for procedural correctness permits . . . the setting aside of agency action that is arbitrary or capricious, 5 U.S.C. § 706(2)(A)." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (internal citations omitted).

> A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (internal citations omitted). "[A] court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. U.S. Dep't of Agric.*, 463 U.S. at 43. "The agency must articulate a rational connection between the facts found and the choice made." *Bowman Transp., Inc.* at 285.

<u>Indian Gaming Regulatory Act [IGRA]</u>

Gaming is prohibited on trust lands unless "the Secretary after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community . . . ." 25 U.S.C. §2719(b)(1)(A). Bureau of Indian Affairs [BIA] regulations define "surrounding community" as "local governments and nearby Indian tribes located within a twenty-five-mile radius of the site of the proposed gaming establishment." 25 C.F.R. § 292.2. The regulations also specify the mechanics of the consultation process which involves sending a letter to the relevant parties and sharing any comments with the applicant tribe, then the applicant tribe must respond to comments. 25 C.F.R. § 292.19. The letter must include several key details

ORDER - 3

about the proposed gaming establishment and must request comments from recipients. 25 C.F.R. § 292.20.

*Detriment to the Community*

Though the Kalispel tribe likely will suffer some detrimental impacts through loss of revenue, the Department's determination that the new casino would not be detrimental to the surrounding community was not arbitrary and capricious. After exhaustive review, the Secretary permissibly weighed the benefits and detriments to the community concluding that approval of the new casino would not be a detriment to the surrounding community. The BIA spent ten years investigating the application, seeking expert review, and working with local officials and governments prior to issuing a decision. The BIA squarely addressed Kalispel's concerns regarding lost profits at the Northern Quest Casino. *See e.g.,* AR4694 – 97, AR54728. The Department's expert concluded that while the Kalispel may suffer in the short term, eventually the profits would rebound and both tribes would benefit. *Id.* Though this conclusion differs from the Kalispel's own expert, reliance on the agency expert was not arbitrary and capricious.

In weighing detriment to the community, the Department need not find that the casino has no unmitigated negative impacts whatsoever, but instead the Secretary must weigh the benefits and possible detrimental impacts as a whole, "even if those benefits do not directly mitigate a specific cost imposed by the casino." *Stand Up for California! v. United States Dep't of Interior*, 879 F.3d 1177, 1187 (D.C. Cir. 2018), *cert. denied sub nom. Stand Up for California! v. Dep't of the Interior*, 139 S. Ct. 786, 202 L. Ed. 2d 629 (2019). "Although the IGRA requires the Secretary to consider the economic impact of proposed gaming facilities on the surrounding communities, it is hard to find anything in that provision that suggests an affirmative right for nearby tribes to be free from economic competition." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 947 (7th Cir. 2000).

*Consultation with Spokane County*

The Department met its statutory obligations for consultation. The parties do not dispute that the Secretary followed the applicable regulations regarding consultation, but

ORDER - 4

the County argues that the consultation process laid out in the regulations is legally insufficient. *Chevron* deference applies to regulations which are "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to statute." *United States v. Mead Corp*, 533 U.S. 218, 227 (2001). The consultation regulations are not manifestly contrary to statute. Though the Court recognizes that consultation requires more than providing notice and accepting comments, *see California Wilderness Coal. v. U.S. Dep't of Energy,* 631 F.3d 1072, 1088 (9th Cir. 2011)*,* the County's lack of response to either of the Department's consultation letters curtailed any opportunity for a more robust consultation process. As illustrated by the Department's response to concerns raised by the City of Spokane, the Department was willing to engage in a meaningful consultation process if issues were raised in a timely manner.

Linked to the County's concerns regarding consultation is the County's complaint that the Department failed to give due consideration to the County's objections to the project. The County argues that the Department should have given the County's objections "substantial weight." The IGRA does not require unanimous approval from local governments, but rather the agency must examine effects on the surrounding community and the Governor of the state must approve. There is no basis in law that would afford more weight to the opinions of the County than those of the cities of Airway Heights and Spokane, or of the Governor of the State of Washington.

*Effects on Fairchild*

The County further charges that the Secretary failed to follow the Joint Land Use Study [JLUS] as it pertains to growth surrounding Fairchild Airforce Base. The County hoped to avoid growth that would negatively affect ongoing or future operations of Fairchild due to the importance of the base to the local economy. Though these concerns are valid, the record reflects that the Secretary sought feedback directly from the Air Force. The Air Force expressed no qualms about the proposed casino. In consideration of concerns raised regarding the proposed development, the Spokane Tribe agreed to restrict building height to 60 ft, despite being permitted to build higher. The self-imposed

ORDER - 5

restriction is binding and illustrates the Tribe's commitment to following the guidelines in the JLUS. Further, the building height restriction represents the fruits of the consultation process showing Spokane Tribe's willingness to compromise and adjust in response to concerns raised by local governments. The Secretary considered both opposition and support from the Kalispel Tribe, local governments, as well as the Air Force, and based on the record, the Court cannot conclude that the Secretary's decision was arbitrary and capricious.

Environmental Impact Statement- NEPA

"NEPA imposes only procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions." *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 756–57 (2004).

> NEPA's implementing regulations require that an EIS contain a statement describing the "purpose and need" of the project, which "shall briefly specify the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action," 40 C.F.R. § 1502.13. Further, in the EIS, the agency must "[r]igorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14. While agencies enjoy "considerable discretion," to define the purpose and need of a project, *Friends of Se.'s Future v. Morrison*, 153 F.3d 1059, 1066 (9th Cir. 1998), in doing so "an agency cannot define its objectives in unreasonably narrow terms," *City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir. 1997). "Courts evaluate an agency's statement of purpose under a reasonableness standard . . . and in assessing reasonableness, must consider the statutory context of the federal action at issue . . . [while] [a]gencies enjoy considerable discretion in defining the purpose and need of a project . . . they may not define the project's objectives in terms so unreasonably narrow, that only one alternative would accomplish the goals of the project." *HonoluluTraffic.com v. Fed. Transit Admin.*, 742 F.3d 1222, 1230 (9th Cir. 2014) (citations and internal quotation marks omitted).

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 603 (9th Cir. 2018). Those seeking to challenge an Environmental Impact Statement [EIS] must show that their interest falls within the zone of interests Congress intended to protect.

ORDER - 6

*Ashley Creek Phosphate Co. v. Norton,* 420 F.3d 934, 939-40 (9th Cir. 2005). Parties asserting purely economic injuries do not have standing to challenge an agency action under NEPA. *Id.*

The scope of the purpose and need statement in the Environmental Impact Statement was reasonable. The EIS defined the purpose and need as follows:

> The purpose for the Proposed Action is to advance the BIA's 'Self Determination' policy of promoting the Tribe's self-governance capability, and to promote opportunities for economic development and self-sufficiency of the Tribe and its members. The Tribe's need for the Proposed Action is based on:
>
> - Lack of a sufficient and sustained income source, which hinders the Tribe's ability to maintain programs and services necessary to improve the overall condition of the tribal membership;
> - Desire to become a completely self-sufficient entity and eliminate reliance on grant funds (soft money);
> - Lack of employment opportunities for tribal members (approximately 47 percent are unemployed, and 43 percent of the employed are below the federal poverty level);
> - Desire to further develop the Tribe's property adjacent to the City with tribal economic enterprises;
> - Potential profitability of Class III gaming in Airway Heights;
> - Desire to re-establish cash reserves to ensure the stability of the Tribe through tough economic times in the future.
> - Desire to improve services and quality of life for tribal members and their families
> - Desire to contribute towards improving local communities through job creation and economic opportunities.

AR 0048663 – 64. Though the statement of purpose does discuss the possibility of a Class III gaming facility, the overall stated purpose is sufficiently broad to allow consideration of the other alternatives discussed in the EIS.

The EIS sufficiently addressed socio-economic impact on the Kalispel tribe. "Under CEQ regulation 40 C.F.R. § 1500.8(a)(3)(ii) (1978), an EIS must assess and discuss the secondary (socio-economic) effects of the project in question." *Stop H-3 Ass'n v.*

ORDER - 7

*Dole*, 740 F.2d 1442, 1461 (9th Cir. 1984). The EIS addressed and discussed the Kalispel's likely loss of revenues. AR0048676. The Kalispel dispute the findings of the Department's experts and complain that the Department should have exercised more control of the contracted expert's conclusions. The Government can rely on an outside expert "so long as the agency objectively evaluates the qualifications and analysis of the expert." *Anderson v. Evans*, 371 F.3d 475, 489 (9th Cir. 2004). "The rule in such cases is that delegation to a private consultant is not a *per se* violation of NEPA. The plaintiff must show the agency actually disregarded its role by failing to review adequately the study it commissioned." *Friends of Endangered Species, Inc. v. Jantzen*, 589 F. Supp. 113, 119 (N.D. Cal. 1984), *aff'd,* 760 F.2d 976 (9th Cir. 1985). The administrative record reflects that the Department reviewed the independent expert's conclusions. *See, e.g.* Tom Hartman Memo AR58300 – 01, AR 63871; AR48368; AR48312; AR29437.

"[O]ne important ingredient of an EIS is the discussion of steps that can be taken to mitigate adverse environmental consequences." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989). While mitigation must be addressed, there is no need to have a formal mitigation plan in place. *Id*. "Since it is those state and local governmental bodies that have jurisdiction over the area in which the adverse effects need be addressed and since they have the authority to mitigate them, it would be incongruous to conclude that the Forest Service has no power to act until the local agencies have reached a final conclusion on what mitigating measures they consider necessary. *Id* at 352-53.

The EIS addressed mitigation and discussed the Intergovernmental Agreement's approach to mitigation. The County argues that the EIS misrepresents mitigation because the County withdrew from the agreement. However, the EIS accurately represented the agreement for mitigation. The Department had no obligation to interfere in the local government's agreements even though the County may have undermined its claim to mitigation payments by withdrawing from the agreement.

ORDER - 8

Trust Relationship

Lastly, Kalispel argues that the Department violated the trust relationship with the Kalispel tribe. The Federal Government owes a duty of trust to all tribes; however, the scope of that duty must be established by statute and that trust duty necessarily equally applies to all tribes so the Government may not favor one tribe over another. *Lawrence v. Department of* Interior, 525 F.3d 916, 920 (9th Cir. 2008), *see also Nance v. EPA,* 645 F.2d 701, 711-12 (9th Cir. 1981). In this situation, the Spokane and Kalispel's interests are not aligned. Consequently, since the Department fulfilled its statutory duty to examine the benefits and harm to all effected parties, the Department did not violate the trust relationship.

**CONCLUSION**

Upon review of the record, the Court concludes that the Secretary's decision is supported by substantial evidence. Further, the Environmental Impact Statement met statutory requirements. The Court has reviewed the file and Motions and is fully informed. Accordingly,

**IT IS ORDERED** that:

1. Federal Defendants' Motion to Strike Extra Record Declarations, filed March 6, 2019, **ECF No. 97**, is **GRANTED**. The Declaration of Chairman Glen Nenema filed by Kalispel Tribe, **ECF No. 79-1**, and the Declaration of Al French, filed by Spokane County, **ECF No. 82-1**, are **STRICKEN**.

2. Intervenor Defendant Spokane Tribe's Cross Motion for Summary Judgment, filed March 6, 2019, **ECF No. 96**, is **GRANTED**.

3. Federal Defendant's Cross Motion for Summary Judgment, filed March 6, 2019, **ECF No. 98**, is **GRANTED**.

4. Plaintiff Kalispel Tribe's Motion for Summary Judgment, filed December 14, 2018, **ECF No. 79**, is **DENIED**.

5. Plaintiff Spokane County's Motion for Summary Judgment, filed December 14, 2019, **ECF No. 82**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 11th day of July, 2019.

06-17-19

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　WM. FREMMING NIELSEN
　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 10